IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

| | | |
|---|---|---|
| MELISSA BROWN, | : | CIVIL ACTION NO. 06-2034 |
| Plaintiff | : | |
| | : | |
| v. | : | Philadelphia, Pennsylvania |
| | : | March 13, 2008 |
| NUTRITION MANAGEMENT SERVICES | : | 2:05 o'clock p.m. |
| COMPANY, et al., | | |
| Defendants | : | |

. . . . . . . . . . . . . . .

ORAL ARGUMENT
BEFORE THE HONORABLE NORMA L. SHAPIRO
SENIOR UNITED STATES DISTRICT COURT JUDGE

- - -

APPEARANCES:

For the Plaintiff:       ELLIOT B. PLATT, ESQUIRE
                         Two Penn Center Plaza, Suite 1930
                         1500 John F. Kennedy Boulevard
                         Philadelphia, PA   19102

For the Defendant:       ALAN B. EPSTEIN, ESQUIRE
                         Spector Gadon & Rosen, PC
                         Seven Penn Center
                         1635 Market Street, Seventh Floor
                         Philadelphia, PA   19103

- - -

Audio Operator:          Andrea Mack

Transcribed by:          Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)

- - -

1              (The following occurred in open court at 2:05
2    o'clock p.m.:)
3              THE COURT:  Good afternoon.  Please be seated.
4              ALL:  Good afternoon, your Honor.
5              MR. EPSTEIN:  Your Honor, may I introduce Jennifer
6    Chalal, who is of my office and here to sit with me --
7              THE COURT:  You may introduce her, especially if you
8    repeat her last name so I can understand it.
9              MR. EPSTEIN:  I'm sorry.  Chalal, C-h-a-l-a-l.
10             THE COURT:  All right.  Welcome.
11             We're here of course for the oral argument on a
12   motion to reconsider my order in Brown v. Nutrition
13   Management.
14             Mr. Epstein, I don't believe I gave leave to file a
15   reply.  I usually contemplate a motion and a response; if a
16   reply is filed and I read it, I cancel oral argument.
17   However, I particularly wanted oral argument because of some
18   issues that I think should be discussed.  I just want to warn
19   you, I haven't read your reply so, if you refer to it, you'll
20   have to explain to me what you're referring to.
21             All right.  I'll hear you.
22             MR. EPSTEIN:  Your Honor, we're here effectively on
23   my motion to vacate the award of a new trial and to alter the
24   judgment.
25             THE COURT:  Yes.

1      MR. EPSTEIN:  And the alteration of the judgment

2   I'll take second, the question -- or the issue of a new trial

3   I will take first.

4      If your Honor recalls, this case came to this Court

5   for trial on two essential liability counts, one of them

6   being one for interference with FMLA rights, the second one

7   being with pregnancy discrimination, gender-based

8   discrimination relating to the pregnancy, and specifically

9   mentioned by Mr. Platt throughout was the  Pregnancy

10  Discrimination Act which relates to that issue specifically.

11      It's important to note that the original complaint

12  and all throughout the pretrial proceedings and right through

13  the opening remarks -- actually, right throughout the trial

14  -- the FMLA count was essentially one where we interfered

15  with the right of the individual and, as your Honor pointed

16  out during the charge conference, interfered by terminating

17  her employment, which is one of the ways that you can

18  interfere.  The jury was presented with a series of questions

19  that requested a general verdict on the two major liability

20  issues, the first being the violation of the FMLA, and

21  there's no argument being made that putting it in the terms

22  of the violation, because I think your Honor amply described

23  it during the charge to the jury what interference was and

24  that termination could be that interference.  The second

25  major liability point presented to the jury was, again, a

1    general verdict on the issue of pregnancy discrimination.

2          As to the first FMLA count the jury found that

3    Nutrition Management and one of the two supervisory people --

4    or one of the two people who was individually charged, Ms.

5    Zywalewski, were responsible for a violation of that count

6    and found that there was no work loss.  The second liability

7    count, they found no liability.  And I don't believe there

8    was any challenge to the Judge's charge or the way that that

9    count was framed.  Because of those two circumstances and

10   because the damages issue was one that your Honor agreed you

11   would mold at the conclusion of the trial that it didn't

12   matter whether we followed the damage issues for each of the

13   counts as to what damages would go with each of those counts,

14   because we were all aware that there was no liability for

15   general compensatory or punitive damages under the FMLA count

16   and that would only apply if they had found liability under

17   the second count of pregnancy discrimination.  They found a

18   violation of the FMLA and based upon your Honor's charge and

19   the theory that was expressed by Mr. Platt on behalf of his

20   client.  That's a charge that goes to the question of

21   interference, they found that by discharging her before she

22   actually went out on pregnancy leave they violated the act

23   and because no specific intent is required to violate the act

24   in that regard, albeit that we would have an affirmative

25   defense of why we did it, they found that in fact we

1   violated.  And that violation could be accorded with no

2   damages, as the jury found, for either back or future pay,

3   because it wasn't a question of the overall termination of

4   her employment in the retaliation context but one of

5   interference and, because of that, they could well find that

6   the only thing that we interfered with was the one or two

7   weeks that she would have taken off.  She was paid for one of

8   those weeks, she would have only been paid for one of those

9   weeks if she had stayed aboard, she would have still lost

10  that second week that she was intending to be off in terms of

11  her maternity leave.  She could have taken all 12 weeks off,

12  but that also would have been without pay.  And, therefore,

13  the jury had the proper foundation, factual foundation to

14  resolve the issue in favor of Nutrition Management in terms

15  of those damages and it doesn't reflect any confusion.

16          The case law, as we cited in my original brief,

17  clearly states that unless there is an obvious form of jury

18  resolution, that is, contrary to any possible result that

19  they could reach under those facts, that your Honor's opinion

20  or discomfort with the verdict can't control and there has to

21  be some demonstration of actual injustice to the extent that

22  that injustice is a manifest injustice, that it goes beyond

23  just a discomfort or I would have reached a different

24  conclusion or I don't think that they got it right, and I

25  don't think there's anything in this record that indicates

1    that they got it wrong with regard to the FMLA.

2          With regard to the Pregnancy Discrimination count,

3    clearly the jury had before it only one set of facts, both

4    from the plaintiff and from the defendant, and that was the

5    plaintiff had told her employer, whether it be all of the

6    employer's representatives or just some of them, but that she

7    had clearly made it known to the employer before she became

8    technically an employee of Nutrition Management that she was

9    pregnant.  And, if she was pregnant, if she in fact was

10   pregnant at the time that she took the job and was discharged

11   very shortly thereafter, it's logical that the jury could

12   find no pregnancy discrimination and there should not be in

13   any circumstance any retrial of that particular count,

14   because as to that count clearly there is no jury confusion.

15   Merely because the jury also found damages that they thought

16   they were finding under the one count of the FMLA doesn't

17   demonstrate that there's confusion, because we know that

18   those damages only arrived for the one count, but they didn't

19   and they didn't -- were unaware of that fact and that non-

20   awareness isn't enough to carry over and find that there was

21   a universal injustice done here in the context of either the

22   FMLA or the original count.

23         If I can --

24         THE COURT:  Manifest is the same as universal?

25         MR. EPSTEIN:  Yes, your Honor.  I'm not asking that

1   there be a different standard or different terminology, I

2   meant universal as applying to both of these counts.

3            As to the alteration of the judgment, as opposed to

4   an amendment but an alteration, your Honor found a nominal

5   damage, and I believe that the case law is very clear under

6   the circumstances that nominal damages just don't apply to

7   the FMLA.  And if your Honor -- respectfully, I suggest if

8   your Honor agrees with me on -- as to either one or both of

9   the original liability counts, the judgment should be altered

10  to reflect the fact that this was not a judgment for one

11  dollar or nominal damages but rather a judgment in favor of

12  the two -- the individual and the entity that were found

13  responsible under the FMLA.

14            THE COURT:  I want to ask you several questions.

15            MR. EPSTEIN:  Yes, your Honor.

16            THE COURT:  If I decline to vacate the order, how

17  would you feel about the plaintiff's request for a new trial

18  on damages only?

19            MR. EPSTEIN:  As to both counts?

20            THE COURT:  Well, I guess it would only be as to the

21  FMLA, his brief wasn't too clear.

22            MR. EPSTEIN:  I think I have the right to have a

23  retrial, if we're going to have a retrial, your Honor, a

24  retrial on the issue of the FMLA.  I think that the jury,

25  under the facts presented, even with astringency of the

1    initial requirement of the plaintiff only to show an

2    interference without intent --

3            THE COURT:  On both liability and damages, is that

4    what you're saying?

5            MR. EPSTEIN:  Yes, it would have to be, your Honor.

6            THE COURT:  All right.  Now, with regard to the

7    individual defendants, the jury found there was no evidence

8    to hold -- Mr. Murray, was it? -- yes, Scott Murray, but

9    there was to hold Karen Zywalewski.  My order didn't discuss

10   whether the individual defendants, whether their case should

11   be retried.  I'm inclined to think that the evidence

12   supported both findings and that we would only need to retry

13   the case against Nutrition Management and Karen Zywalewski,

14   knowing that if she is found liable Nutrition Management is

15   going to pay anyway, and maybe you could even reach a

16   stipulation on that so we try it just against Nutrition

17   Management.  But I would like to hear your comment on that.

18           MR. EPSTEIN:  Well, with regard to the issue of

19   retrial, your Honor, I certainly would want the opportunity

20   to convince the jury that Ms. Zywalewski is not responsible.

21   As to Scott Murray, I again believe it falls within the same

22   purview as the FMLA decision and the other decisions, the

23   jury found it and that's what it is.

24           THE COURT:  I understand your argument, you want to

25   retry only the things that might have been adverse to you,

1   not anything that was in your favor.

2          MR. EPSTEIN:  If I could be so bold --

3          THE COURT:  That strikes me as somewhat unbalanced.

4          MR. EPSTEIN:  No, your Honor, I want to not have a

5   retrial.

6          THE COURT:  I understand that.

7          MR. EPSTEIN:  But as to the matter of confusion or

8   the issues that were raised by your Honor as the reasons for

9   retrial, what I'm saying as to each of the points, whether

10  it's against me or for me, is I don't see the basis for jury

11  confusion.  If we're pinpointing --

12         THE COURT:  I understand your argument.

13         MR. EPSTEIN:  If we're pinpointing as to Mr. Murray,

14  I'm saying I don't see any basis for jury confusion or --

15         THE COURT:  Thank you.

16         MR. EPSTEIN:  -- improper action by the jury.

17         THE COURT:  All right.  I'll hear from counsel for

18  the plaintiff, Mr. Platt.

19         Would you start at the end?  What about Scott and

20  Zywalewski?  I didn't discuss them in my order but, in

21  reviewing this for today, it occurred to me that I have to

22  make a decision about them.

23         MR. PLATT:  My feeling about that is, your Honor,

24  that I believe that the one thing that could be saved or

25  retained from the verdict is the finding of liability on

1  FMLA, but it would require an assessment of damages and, if

2  we proceeded that way, I could agree that we would not need

3  to proceed against Mr. Murray.  But if it was your Honor's

4  decision that both liability and damages would be retried in

5  the FMLA case I would argue to your Honor that it would be

6  much better to have everybody kept in because, if there was

7  overriding confusion, then we have to acknowledge that there

8  was a potential for confusion as to everything, that's --

9        THE COURT:  That isn't true at all, the issues were

10  quite discrete.  The issue with regard to Karen Zywalewski

11  and Scott Murray was were they controlling people --

12        MR. PLATT:  I understand.

13        THE COURT:  -- and, whatever your reason for getting

14  them in in the first place, my personal opinion is it doesn't

15  really make any difference because, if there were liability,

16  the corporate defendant is going to cover it.  You had

17  discovery, so you don't gain anything by having them parties

18  for the purpose of discovery, it just lengthens the trial and

19  requires me to charge on controlling person.  And, frankly, I

20  don't see how the jury could have been confused on that issue

21  as to either of them.

22        MR. PLATT:  With respect, your Honor, I don't think

23  it lengthens the trial certainly and --

24        THE COURT:  Sure, it does.  You have to have

25  testimony, you have to a charge on who is the controlling

1   person and what the concept is and why, but --

2         MR. PLATT:  I should perhaps say I don't think it

3   significantly lengthens --

4         THE COURT:  -- I'll hear your argument.

5         MR. PLATT:  I think there's no way to avoid the fact

6   that there was jury confusion and probably compromise here,

7   as your Honor first determined when you made the order, based

8   on the way the jury interrogatories were worded, that --

9         THE COURT:  But not that jury interrogatory, it was

10  the interrogatories on damages.

11        MR. PLATT:  Exactly.  But, as Mr. Epstein points

12  out, the jurors, the jurors did not know that what they were

13  awarding could not be granted under the substantive law.

14        THE COURT:  I understand that.  Is that directed to

15  Murray and Zywalewski?

16        MR. PLATT:  I'm sorry, no.  I thought you wanted me

17  to go forward on the other arguments.  No.

18        THE COURT:  No, I --

19        MR. PLATT:  Okay, forgive me.  Let me articulate the

20  main point that I want to make about the Family Medical Leave

21  is that I think the jury did find liability against the

22  corporate and one individual defendant, I don't think it was

23  possible for them, other than through a compromise, not to

24  award back pay and front pay.  If the cases --

25        THE COURT:  If I agree with you there was jury

1    confusion, how on earth can I justify a new trial on the

2    Family Medical Leave Act, which was in favor, and not on the

3    damages aspect of the Title VII?  I don't understand, you

4    wanted me to -- you want me to retry damages only as to both

5    or as to just the Family Medical Leave Act?

6           MR. PLATT:  As to just the Family Medical Leave, but

7    also the Title VII has to be retried.

8           THE COURT:  And --

9           MR. PLATT:  I thought I made that clear, I'm sorry.

10          THE COURT:  -- Mr. Epstein says we should just try

11   the Family Medical Leave Act and leave the -- if we retry

12   anything, which he proposes, and leave the Title VII alone.

13   Of course, the problem with that is it deprives me of my

14   rationale; if there's confusion, it's confusion as to both,

15   not to one.

16          MR. PLATT:  Well, certainly it has to be as to the

17   Title VII, your Honor, because they granted the damages that

18   go with Title VII not knowing that they wouldn't be

19   available.  And, your Honor, I believe that the confusion

20   caused by the verdict form caused the compromise.

21          THE COURT:  All right.  Is there anything else?

22          MR. PLATT:  I don't understand the argument that if

23   you're terminated from your employment you don't have any

24   wage loss, it follows.  If you're terminated illegally, you

25   have to have a wage loss and that's why I was suggesting

1   that, at a minimum, it has to be on the Family Medical Leave
2   a retrial of damages.
3           THE COURT:  Well, maybe he's saying you're entitled
4   to 12 weeks without pay, she didn't take 12 weeks over that
5   period of time, she wouldn't get pay --
6           MR. PLATT:  The --
7           THE COURT:  -- and that the loss, if any, would
8   start at the end of that period.
9           MR. PLATT:  Well, even if that were the case, that's
10  still not a zero.
11          THE COURT:  There would still be some wage loss.
12          MR. PLATT:  It could not be a zero in this case,
13  your Honor.
14          THE COURT:  All right.
15          MR. PLATT:  Let me just see if there's anything
16  else.  I don't think the nominal -- especially if your Honor
17  grants a new trial, I think the nominal damages is not an
18  issue and the Third Circuit hasn't reached it, as I argued in
19  the brief.
20          THE COURT:  Yes, he may be correct about that.  That
21  would affect only your counsel fees --
22          MR. PLATT:  Yes.
23          THE COURT:  -- under his version.
24          MR. PLATT:  I understand.
25          THE COURT:  Yes.

1            MR. PLATT:  So, again, but let me just make that

2    clear, because perhaps there was confusion from the brief

3    that I did not intend.  I believe that there has to be a

4    retrial of the Title VII claim and, at a minimum, the damages

5    on the Family Medical Leave claim.  And if your Honor felt

6    that there was sufficient confusion that we had to retry the

7    liability of Family Medical Leave I would understand that,

8    but I think that that could be saved, but there would have to

9    be the retrial of damages.

10            THE COURT:  I don't think -- I don't see how, in

11   fairness to Mr. Epstein, it could be saved.  If you get a new

12   trial, it's going to be on everything.

13            MR. PLATT:  That I think would be a correct result

14   as well under the circumstances.

15            THE COURT:  All right.  Thank you.

16            Do you wish to respond?

17            MR. EPSTEIN:  Your Honor, from your Honor's

18   questions, I don't think there's a great deal of need to, but

19   I do want to argue the issue with regard to the FMLA,

20   because, if there is a retrial, it's certainly going to be an

21   important issue and that is, is that under the FMLA there are

22   two theories, this case was brought under one of those

23   theories.  If we interfered with her right to take 12 weeks,

24   and she wasn't going to get paid for those and she was going

25   to get fired anyhow, then there could be zero damages and it

1    is not an untoward result if that result occurs again, if

2    your Honor orders a new trial.

3         THE COURT:  I understand your argument.

4         MR. EPSTEIN:  Thank you.

5         (Discussion held off the record.)

6         THE COURT:  All right.  I'm troubled -- I'm not

7    going to grant it, I'm not going to grant your motion.  We'll

8    have a new trial, but we'll have a new trial on everything,

9    liability and damages on FMLA and Title VII, I think that's

10   the only fair way.  I believe that the verdict was against

11   the weight of the evidence, but it's not my personal

12   preference.  I feel that, as a result of how I crafted the

13   interrogatories, inadvertently there was juror confusion that

14   resulted in manifest injustice or universal injustice, as you

15   prefer, Mr. Epstein.

16        What troubles me is the two individuals.  I would be

17   inclined -- certainly the evidence was sufficient to support

18   the verdict as to each of them, I don't think the confusion

19   affected them, they were separate interrogatories and I would

20   be inclined to drop them as defendants on the retrial.  I

21   will be candid with you, if I could conceive that that would

22   be reversible error, I wouldn't do it because I have no

23   desire to try this case for a third time, especially on an

24   issue that makes no difference in terms of the ultimate

25   result of whether the plaintiff recovers or not.

1          Having made one decision, do you wish to be heard

2     again on the other?

3          MR. PLATT:  Your Honor --

4          THE COURT:  Do you want us to try this case against

5     Murray and Zywalewski?

6          MR. PLATT:  Certainly against Ms. Zywalewski, your

7     Honor.  The jury found her liable, I don't see how we could

8     not retry it unless we hold that verdict.

9          THE COURT:  We could not retry it because, as a

10    matter of discretion, you would decide there's no point to it

11    and we should have a clearer, shorter trial, but I gather you

12    won't do that.  So, we'll try the whole blasted thing over

13    again, including against Murray and Zywalewski.  But if they

14    find that neither of them are responsible I won't hear you to

15    complain.

16         Did you want to say anything?

17         MR. EPSTEIN:  No, your Honor.

18         THE COURT:  All right.  When will you be ready to

19    retry?

20         MR. PLATT:  Your Honor, I would love to retry it as

21    soon as possible.  The problem that I have is that Ms. Brown

22    does not have any more paid time off until the 1st of July.

23         THE COURT:  Well, I don't know when I can try it

24    anyway and I don't have to guarantee her paid time off.

25         MR. PLATT:  I understand.

1          THE COURT:  When will you be ready to try it?

2          MR. EPSTEIN:  If your Honor will give me the times,

3    I do have my calendar with me.

4          THE COURT:  Well, bring it.  And how long will the

5    trial be this time?

6          MR. PLATT:  I would hope it would be, in terms of

7    trial days, no longer --

8          THE COURT:  That's what I'm talking about.

9          MR. PLATT:  We had essentially, I would say, around

10   11 or 12 trial -- no, it couldn't -- no -- we got around

11   eight trial days or nine, I think it would be the same thing,

12   your Honor, maybe a little less, depending on how many

13   defense witnesses are called.

14         MR. EPSTEIN:  We had eight days, your Honor, but

15   they weren't all full days, if you recall, and I don't see on

16   a retrial --

17         THE COURT:  It should be shorter, you both know what

18   you're doing.

19         MR. EPSTEIN:  -- it should be considerably shorter,

20   your Honor.

21         THE COURT:  And the charging conference will be much

22   shorter, drafting the interrogatories won't take us much

23   time, because there was confusion by the Court, I regret to

24   say, on who decided what damages.

25         We need a date for the retrial of this case, it's at

1   least a week, maybe six or seven trial days.

2          (Pause.)

3          THE DEPUTY CLERK:  It looks like June 16th.

4          THE COURT:  When is the next -- that's -- when does

5   she start getting paid leave again?

6          MR. PLATT:  July 1st, your Honor.

7          THE COURT:  When is the next time after June?  I

8   mean, that's so close to July 1st that I'm willing to

9   postpone it.

10          (Pause.)

11          (Discussion held off the record.)

12          THE COURT:  Either of you going on vacation July

13   14th?

14          MR. EPSTEIN:  Your Honor, I have a matter scheduled,

15   a commercial arbitration scheduled for quite some time

16   involving three --

17          THE COURT:  For when?

18          MR. EPSTEIN:  -- commercial arbitrators for July

19   14th.

20          THE COURT:  Just one day?

21          MR. EPSTEIN:  It's July 14th, 15th and 16th, your

22   Honor.

23          (Discussion held off the record.)

24          THE COURT:  Is it going to take three full days?

25          MR. EPSTEIN:  Yes, your Honor.  It's a departing

1  lawyer --

2          THE COURT:  Because I can't --

3          MR. EPSTEIN:  -- it's a departing lawyer in a law

4  firm and we're lucky if we get it in in those three days.

5  Everybody in the room will be lawyers and that always makes

6  it a little more difficult.

7          (Discussion held off the record.)

8          MR. EPSTEIN:  I'm free for the weeks after that,

9  your Honor, for --

10          THE COURT:  But I'm not.

11          MR. EPSTEIN:  I understand.

12          (Discussion held off the record.)

13          THE COURT:  I think I have to do it in June, Mr.

14  Platt, I'm sorry.

15          (Discussion held off the record.)

16          THE COURT:  We'll have to do it June 16th.  Do you

17  have anything apart from your client's inconvenience?

18          MR. PLATT:  The only difficulty is that one of the

19  witnesses that we had called is not available from the 18th

20  to the 30th.

21          THE COURT:  Who is it?

22          MR. PLATT:  Diane Kostin.

23          THE COURT:  I forget who she is.

24          MR. PLATT:  She was the new Courtland employee, who

25  was I think our last witness, who testified that she was

1   there in the nursing home, in Plymouth House, basically

2   overseeing operations from the end of July into the -- the

3   whole time that Ms. Brown was still there, basically, and

4   that nobody --

5           THE COURT:  And when is she going away?

6           MR. PLATT:  She will be away the 18th to the 30th of

7   June.

8           THE COURT:  Can we do her the 17th?

9           MR. PLATT:  It's a little out of order if we're

10  starting on the --

11          MR. EPSTEIN:  We have her testimony, we can read it.

12          MR. PLATT:  -- 16th --

13          THE COURT:  What?

14          MR. EPSTEIN:  We have her testimony, your Honor, she

15  was on the stand for a total of six minutes.

16          MR. PLATT:  I think it was more than six minutes.

17          THE COURT:  We'll do it by video.  I mean, I don't

18  know if I can do it in August.

19          (Discussion held off the record.)

20          THE COURT:  I can give you from the 13th to the 20th

21  of August.

22          MR. PLATT:  That works for me, your Honor, and for

23  my witnesses, as far as I know.

24          MR. EPSTEIN:  No problem here, your Honor.

25          THE COURT:  All right.  If there's any change in the

1  -- you know, in the witnesses or the exhibits or something,

2  submit a written statement.  I don't think we need to go

3  through new pretrial memos and everything like that.  You can

4  submit new requests for findings of fact and conclusions of

5  law.  Okay?

6         (Pause.)

7         THE COURT:  Is there anything else?

8         MR. PLATT:  No, your Honor, except I am a little

9  confused about the issue about requested findings of fact.

10         THE COURT:  I mean points for charge, excuse me.

11         Okay.  I'll see you.

12         (Pause.)

13         MR. EPSTEIN:  Your Honor, I'm a little confused, I'm

14  sorry.  You said we were going to start --

15         THE COURT:  Just a little?  You're lucky.

16         MR. EPSTEIN:  -- the 13th, which is a Wednesday,

17  correct?

18         THE COURT:  Yes.

19         MR. EPSTEIN:  Okay, I just wanted to make sure.

20         THE COURT:  No, the --

21         MR. EPSTEIN:  Somebody said Monday and I --

22         THE COURT:  I don't want to do it on Monday.

23         MR. EPSTEIN:  That's fine, your Honor, I wasn't -- I

24  wasn't questioning the date, I was just questioning my own

25  confusion.

1          THE COURT:  I'll be in New York for the American Bar

2    Association, I think.  All right.

3          MR. PLATT:  Thank you, your Honor.

4          THE COURT:  If you want any help in discussing

5    settlement, call my magistrate judge.

6            (Hearing adjourned at 2:36 o'clock p.m.)

7                              *  *  *

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Geraldine C. Laws, CET              Dated 7/1/09
Laws Transcription Service