# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MELISSA BROWN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **NUTRITION MANAGEMENT** | : | |
| **SERVICES CO., et al.** | : | |
| | : | **NO. 06-2034** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**NORMA L. SHAPIRO, J.**                                                                                       **July 22, 2010**

Melissa Brown filed this action against Nutrition Management Services Company ("Nutrition Management"), New Courtland Elder Services ("New Courtland"), Scott Murray, and Karen Zywalewski for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) ("Title VII"), sex discrimination under the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, §§ 951 *et seq*. ("PHRA"), and unlawful interference with her rights under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq*. ("FMLA"). A jury awarded Brown $74,000 in back pay damages from October 19, 2004 (the date of termination) to August 22, 2008 (the date of the verdict) under the FMLA and found no liability under Title VII; the PHRA claim was dismissed before trial.

The court entered judgment in favor of Brown and against Nutrition Management and subsequently entered orders awarding Brown back pay, liquidated damages, and attorney's fees, but denying her motion for front pay. Nutrition Management appealed several of the court's orders; Brown cross-appealed the orders denying her motion for front pay and reducing the amount of attorney's fees requested. The Court of Appeals affirmed the judgment except the

denial of Brown's claim for front pay.[1] The United States Court of Appeals for the Third Circuit directed this court to consider whether front pay is appropriate and in what amount;[2] and to reconsider the amount of its attorney's fee award in light of any front pay awarded.

## I. Findings of Fact

Brown was hired as Food Service Director at Plymouth House, a nursing home in Montgomery County, Pennsylvania, in 2002 by its then owner, AFIDA. (Tr. 36, Aug. 14, 2008.) In 2004, New Courtland Elder Services bought Plymouth House, and in late July 2004 contracted all the food service responsibilities to Nutrition Management for a one year period ending July 14, 2005. Nutrition Management contracts to provide food services to hospitals, schools and nursing homes. (Tr. 55, May 5, 2010; Tr. 113, Aug. 15, 2008.) Brown became formally employed as Food Service Director of Plymouth House by Nutrition Management on or about August 2004. (Tr. 57-59, Aug. 14, 2008.) On October 19, 2004, Brown was terminated from her employment as Food Service Director with Nutrition Management. (Tr. 77, Aug. 14, 2008.) Brown was earning $40,000 per year when terminated. (Tr. 59, Aug. 14, 2008.) Nutrition Management hired Debra Smith to succeed her as Food Service Director at Plymouth House.

---

[1] The United States Court of Appeals for the Third Circuit found that the district court erred when it interpreted the jury's answers to the interrogatories as denying Brown any award of front pay:

> In response to Interrogatory No. 7, which asked about the amount of "back pay" due to Brown, the jury wrote "$74,000." In response to Interrogatory No. 8, which asked about "front pay," the jury wrote "OMIT per Judge's instructions." In answering Interrogatory No. 9, regarding the amount the damages should be reduced for failure to mitigate, the jury wrote "$0."

*Brown v. Nutrition Management Services Co.*, Nos. 08-3840, 09-1779, 2010 WL 939935, at *5 (3d Cir. May 17, 2010) (citations omitted). The appellate court concluded that the jury wrote "OMIT per Judge's instructions" because it believed the district court would calculate the amount of front pay, not because it believed Brown was not entitled to it.

[2] Although Brown initially consented to a jury determination on the issue of front pay, she now asks for a determination of this issue by the district court. The law permits the district court to make this determination. *See Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 78 n.1 (3d Cir. 2009).

Ms. Smith was paid $43,500 per year. (Pl.'s Ex. # 50.) The contract of Nutrition Management to manage food services at the Plymouth House ended on July 14, 2005; all Nutrition Management personnel left the premises at that time. (Tr. 56, May 5, 2010.) Generally, when a contract to provide food services ends or is not renewed, Nutrition Management relocates the food service director to another facility managed by it in a position similar to the one the manager had. (Tr. 53-54, Aug. 18, 2008.)

In October, 2005, Brown became employed by Nutrition Management as the manager of a snack bar (the "Terrace Café") at Fox Chase Medical Center. (Tr. 83, Aug. 14, 2008.) She has expressed interest in becoming assistant director of all the food service facilities at Fox Chase Medical Center, but has not been promoted. (Tr. 22, May 5, 2010.) Brown continues to work for Nutrition Management as the Terrace Café manager at Fox Chase Medical Center. (Tr. 19-20, May 5, 2010.) As Terrace Café manager, Brown earned: $5,039.89 (2005);[3] $26,641.40 (2006); $28,480.00 (2007); $27,537.75 (2008); and $30,352.27 (2009). (Tr. 87-88, Aug. 14, 2008; Tr. 17-18, May 5, 2010.)

Brown is 39 years old and provides the majority support for her four children; the youngest child is five years old. (Tr. 15-16, May 5, 2010.) Brown intends to work until she reaches retirement age, at 65 or 70. (Tr. 18, May 5, 2010.)

## II. Discussion

The FMLA allows "equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Front pay is an alternative to the

---

[3] Brown worked for Adecco, a temporary agency, as a flagger on highway projects from the Spring of 2005 until October of 2005. Brown received $10,299.27 from Adecco in 2005. (Tr. 86-87, Aug. 14, 2008.)

traditional equitable remedy of reinstatement, and is appropriate where there is irreparable animosity between the parties, or where a comparable position no longer exists. *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 86 (3d Cir. 2009). The purpose of front pay is to reestablish the victim's rightful place in the job market following unlawful conduct by an employer. *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 889 (3d Cir. 1984). The award should account for expected future damages caused by the wrongful conduct, but not "guarantee every claimant . . . an annuity to age 70." *Anastasio v. Schering Corp.*, 838 F.2d 701, 709 (3d Cir. 1988). Brown concedes that reinstatement to a food service director position with Nutrition Management is not a viable remedy because there is irreparable animosity between Brown and her likely supervisor, Karen Zywalewski, a named defendant in the case. (Pl. Mtn to Am. J. 7.)

Any facts in the Discussion section not found in the Facts section are incorporated by reference therein.

### A. Existence of Comparable Position

When a former employee cannot be reinstated, front pay is typically appropriate. However, when the position the victim sought is eliminated and there is no evidence of a comparable position in existence at the time of judgment, front pay should not be awarded. *Bartek v. Urban Redevelopment Authority of Pittsburgh*, 882 F.2d 739, 746 (3d Cir. 1989). The victim has the initial burden of identifying those positions upon which an award of damages is based. *Id.* at 746-47.

Nutrition Management contends that the holding in *Bartek* forecloses Brown's request for front pay because the Plymouth House contract ended on July 14, 2005, and Brown failed to offer evidence of a comparable position in existence at the time of judgment. In *Bartek*, a jury

found plaintiff Bartek was denied promotions in 1984 and 1985 based on his age in violation of the Age Discrimination in Employment Act ("ADEA"). 882 F.2d at 741. The District Court limited the scope of Bartek's damages because the position illegally withheld by the Urban Redevelopment Authority of Pittsburgh ("URA") was eliminated after URA's reorganization on December 31, 1986, and Bartek failed to identify a comparable position that existed after that time. *Id.* at 746-48. Back pay damages were awarded up to December 31, 1986; front pay damages were denied. *Id.* The Third Circuit affirmed the District Court's damage award because "there was no position in existence that Bartek was being unlawfully denied at the time of the judgment." *Id.* at 747.

Brown has offered evidence that Nutrition Management relocates a food service director to similar a position when a food service contract ends or is not renewed. Karen Zywalewski, District Manager for Nutrition Management, testified that she supervised all food service directors in her district, and in the summer and fall of 2004, she supervised ten facilities. (Tr. 113, Aug. 15, 2008.) Kathleen Hill, president and chief operating officer of Nutrition Management, testified that since 2005, the number of food service managers employed by Nutrition Management has probably decreased, but no evidence was offered that the food service director position has been completely eliminated by the company. (Tr. 59, May 5, 2010.) There is sufficient evidence to support a finding that a comparable position existed after the Plymouth House contract ended and at the time of judgment. Front pay damages are not foreclosed for this reason.

B.  Mitigation

Nutrition Management contends that Brown's lack of mitigation efforts from the date she obtained the Terrace Café job and onward are relevant to the court's front pay determination. Nutrition Management argues that Brown did not use reasonable diligence in attempting to secure similar employment to that of a food service director after she accepted employment as snack bar manager. A plaintiff has a duty to mitigate damages prior to trial. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982). The burden falls on the defendant employer to prove a failure to mitigate damages. *Anastasio*, 838 F.2d at 707. The defendant employer can satisfy the burden by: (1) demonstrating that substantially equivalent work was available, and that the victim did not exercise reasonable diligence in attempting to secure such employment, *id.*; or (2) proving that it offered the victim a job that was substantially equivalent to the prior position. *Id.* at 708.

At the conclusion of trial, the jury awarded Brown $74,000 in back pay. The jury decided that Brown's damages for past and future lost wages should not be reduced for any failure to mitigate.[4] The answer to jury interrogatory # 9 makes explicit that Nutrition Management failed

---

[4] The jury's answers to interrogatories on general mitigation, back pay and front pay were as follows:

7. If you answered "yes" to any of Questions 2, 4, or 6, in what amount, if any, has plaintiff, Melissa Brown, proved by a preponderance of the evidence damages for lost wages or financial benefits from the time she was terminated until today [8/22/08] as a result of her termination?

$ 74,000

8. If you answered "yes" to any of Questions 2, 4, or 6, in what amount, if any, has plaintiff, Melissa Brown, proved by a preponderance of the evidence damages for future lost wages or financial benefits as a result of her termination?

$ OMIT per Judges [sic] instructions

9. By what amount has defendant proved by preponderance of the evidence that plaintiff's damages for past and future lost wages, if any, should be reduced for her failure to mitigate?

$ 0

6

to meet its burden regarding any failure to mitigate. The court is bound by this determination in assessing front pay. *Donlin*, 581 F.3d at 86 ("When a defendant's front pay objection is predicated upon the same objections regarding mitigation of damages which [have been] rejected with regard to back pay, we reject the front pay argument as well"). Front pay damages, if awarded, will not be reduced for failure to mitigate.

Assuming the court could consider Brown's mitigation efforts independently on remand, Nutrition Management would have still not met its burden. While Nutrition Management did place in question the diligence of Brown's employment search,[5] it produced little to no evidence[6] showing substantially equivalent work was available. Nutrition Management had the burden of showing that Brown failed to exercise reasonable diligence to mitigate her damages, *and* that there was a reasonable likelihood that Brown might have found comparable work if she had exercised reasonable diligence. *Anastasio*, 838 F.2d at 708 (emphasis added). Without evidence that comparable work was available, Brown's testimony as to her mitigation efforts stands

---

(Interrog. to the Jury 2.)

[5] Brown testified that since August 2008 she sent ten to twenty resumes through email for unspecified positions in nursing homes and hospitals. (Tr.19, May 5, 2010.) She only named one prospective employer that was seeking a food service director. Brown did not maintain any records of her job search, follow up her applications with a telephone call, or reach out to others in the food service industry to determine whether any positions were available. (Tr. 25-29, May 5, 2010.) Certainly if the burden had been on Brown to establish reasonably diligent mitigation, these minimal efforts would be lacking.

[6] During the testimony of Kathleen Hill, president and chief operating officer of Nutrition Management, counsel for the Nutrition Management asked Ms. Hill to opine on the "general complexion on positions available in the food service industry, whether that's increased or decreased since 2005":

> KATHLEEN HILL: It depends on the market. Health care is a very active market in the City of Philadelphia and in the suburban areas so we're, you know, there are positions available for staff.

(Tr. 61-62, May 5, 2010.) This statement, if assumed credible, would not satisfy Nutrition Management's burden on mitigation.

unrebutted. *Id.* Front pay is not foreclosed based on a failure to mitigate damages.

    C.    <u>Front Pay Speculation</u>

Brown seeks twelve years of front pay less amounts received from full-time employment from August 22, 2008, the date of the verdict.[7] An award of front pay "necessarily implicates a prediction about the future," but a court should avoid unreasonable speculation regarding future conditions. *Donlin*, 581 F.3d at 87. The court may exercise its discretion in selecting a cut-off date for an equitable front pay remedy. *Id.* In selecting a cut-off date, the court may consider a variety of factors, including work and life expectancy. The time frame covered is only what is required to reestablish the wronged employee's place in the job market. *Id.* The risk of lack of certainty with respect to the projections of lost income must be borne by the wrongdoer, not the victim. *Bartek*, 882 F.2d at 746.

Brown has offered evidence from which a reasonable front pay calculation could be made. The record establishes: (1) Brown's salary at termination; (2) her income from termination through the 2009 tax year; (3) her current age and retirement expectations; (4) the salary offered by Nutrition Management to the food service director replacing Brown; and (5) the pay increases received by food service directors between 2004 through 2008–i.e., 2 % to 5% annually (Tr. 114-15, Aug. 15, 2008). This evidence, including facts established from the time of the verdict to present day, diminishes some uncertainty in calculating a front pay award.

The record also contains credible evidence regarding Brown's performance as Food Service Director at Plymouth House and her lack of qualification for the position; such factors

---

[7] Brown contends that a reasonable front pay award is $231,652, calculated by taking the average yearly back pay award and multiplying it by 12 years. The jury back pay award averaged over 46 months, the time between termination and verdict, provides an average monthly back pay award of $1,608.70. The average yearly back pay award is $19,304.40. The yearly average, $19,304.40, multiplied by 12 is $231,652.80.

inform the court on Brown's employability and work expectancy. *Dillon v. Coles*, 746 F.2d 998, 1006 (3d Cir. 1984) (how long a wronged employee would have continued in employment, her competency, qualifications, and ability to get along with co-workers/superiors are relevant to the trial judge's determination of equitable remedies). The record reveals that Brown attended Community College of Pennsylvania to obtain dietary management certification while a food service worker. Brown completed the certification program, but never passed the certification test. (Tr. 34-35, 99-101, Aug. 14, 2008.) Brown worked as an assistant food director for a year before obtaining the position of Food Service Director at Plymouth House. (Tr. 35-36, Aug. 14, 2008.) Brown's performance was criticized frequently by the director at Plymouth House before Nutrition Management took over the food service operations. (Tr. 66, 110-11, Aug. 14, 2008.) Nutrition Management offered evidence of deficiencies in Brown's performance as Food Service Director. (Tr. 133-38, Aug. 14, 2008; Tr. 203-07, Aug. 15, 2008; Tr. 13-14, Aug. 18, 2008; Tr. 28-29, 53-60, 105-107, Aug. 20, 2008.) The court acknowledges that the jury found Brown was terminated in violation of the FMLA, not because she was unqualified for her position. The jury did not opine on how long Brown would have remained as a food service director had she not been illegally terminated. No evidence has been offered that it would take twelve years from the date of the verdict for Brown to reach and retain her rightful place in the job market. The evidence would suggest, given her present occupation and a two year award of front pay, Brown has reached her rightful place in the job market.

    Two years is a reasonable period of time for the award of front pay. The court adopts Brown's methodology for calculating front pay as it is reasonable and supported by the evidence of record.

9

## III. Conclusions of Law

1. This court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 29 U.S.C. § 2617(a), and 42 U.S.C. § 2000e-5(f). Venue is proper.

2. The court has jurisdiction to decide the issue of front pay pursuant to the remand order by the United States Court of Appeals for the Third Circuit. *Brown v. Nutrition Management Services Co.*, Nos. 08-3840, 09-1779, 2010 WL 939935 (3d Cir. May 17, 2010).

3. Reinstatement is not a viable equitable remedy.

4. Nutrition Management has not met its burden proving that Brown failed to mitigate her damages.

5. An award of two years of front pay is reasonable.

6. Brown is entitled to a front pay award of $38,608.80[8] and $224.90 in interest.[9]

---

[8] Generally, in an action under a federal statute, an award of front pay must be reduced to its present value. Given the timing and length of this front pay award, present value discounting is unnecessary. The court also declines to award liquidated damages to double the front pay award. *Bruno v. W.B. Saunders* Co., 882 F.2d 760, 772 (3d Cir. 1989); *Blum v. Witco*, 829 F.2d 367, 382-83 (3d Cir. 1987).

[9] Because of the unique procedural history of this action whereby front pay is considered and awarded nearly two years after the jury verdict, as opposed to at the time of the jury verdict, the court, in its discretion, finds that Brown is entitled to interest on the front pay award to compensate her for the loss of use of her money. The court again adopts the method proposed by Brown for computing interest. (Pl. Mtn to Am. J. 2-4.) The federal post-judgment interest rate in effect on the anniversaries of Brown's termination were:

October 19, 2008     1.25%
October 19, 2009     .36%

and, on the date of this award, July 22, 2010, .28%.

The mathematical computation, then, is:

August 22, 2008 to October 19, 2008
    3,217.40 x 1.25% = 40.22

October 19, 2008 to October 19, 2009
    (3,217.40 + 19,304.40) x .36% = 81.08

October 19, 2009 to July 22, 2010
    (3,217.40 + 19,304.40 + 14,478.30) x .28% = 103.60

Thus, the total interest on the front pay is: (40.22 + 81.08 + 103.60) = $224.90

7. Because of the increased recovery by Brown, Brown's attorney is entitled to additional $6,000 in attorney's fees.[10]

Judgment will be entered accordingly.

---

[10] By memorandum and order of January 26, 2009, the court awarded Brown $145,104 in attorney's fees and $11,639.81 in costs. The court found the lodestar of $181,380 for 453.4 hours of service reasonable, and adjusted the lodestar downward 20% because: (1) Brown did not prevail on two of the three counts asserted in the complaint or against three of the four defendants; (2) on her one successful claim, she received substantially less than requested; and (3) the jury awarded no front pay and the court denied her post-trial motion. In light of Brown's partial success on the front pay award, the court, having reconsidered its downward adjustment to the lodestar, awards an additional $6,000 in attorney's fees.